UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KRISTIN ZOLL,

                Plaintiff,

-against-

NORTHWELL HEALTH, INC.,

                Defendant.
----------------------------------------------------------------X

For Online Publication Only

**SUPPLEMENTAL MEMORANDUM AND ORDER**
16-CV-2063 (JMA) (AYS)

FILED
CLERK
8/5/2019 1:03 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Robert L. Levy and Sherie Nan Buell
Bantle & Levy LLP
817 Broadway
New York, New York 10003
    *Attorney for Plaintiff*

Christopher G. Gegwich and Tony Garbis Dulgerian
Nixon Peabody LLP
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff filed the instant action against her former employer, Northwell, alleging intentional discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. On May 30, 2019, the Court issued a Memorandum and Order granting Defendant's motion for summary judgment in part but deferring ruling on Plaintiff's claim that the extension of her probationary assessment period was discriminatory, inviting the parties to submit supplemental briefing on that claim. (Mem. and Order ("SJ Order"), ECF No. 61.) The Court has now considered the parties' supplemental briefing. (ECF Nos. 62, 64.) For the reasons stated below, Defendant is entitled to summary judgment concerning Plaintiff's final claim.

## I. BACKGROUND

The Court incorporates the facts outlined in the SJ Order but will briefly recite the facts most relevant to the instant claim.[1] Plaintiff, who is Caucasian, was working at Northwell as a social worker, when she applied for, and was ultimately hired for, the position of Manager, Marketing and Education for the Transplant Center. (Rule 56.1 Stmt., ECF No. 44, ¶¶ 16–17, 38–40.) Northwell characterized this change in Plaintiff's employment as a "transfer" and, as a result, Plaintiff was placed on a probationary assessment period when she assumed this role, on or around June 30, 2014. (Id. ¶¶ 24, 40, 47.) Plaintiff was terminated on January 23, 2015, about six months and three weeks after she assumed this new role. (Id. ¶ 236.) The written notice of decision stated that Plaintiff was terminated because she failed to pass probation. (Sealed Palms Decl., ECF No. 43-4, Ex. K.)

## II. DISCUSSION

Regarding Plaintiff's termination, the Court found that she "failed to show 'sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire [Plaintiff] was based, at least in part, on' her race." (SJ Order, at 24 (citing Holcomb v. Iona Coll., 521 F.3d 130, 141 (2d Cir. 2008)).) The Court now addresses Plaintiff's assertion that the extension of her probationary assessment period, which occurred approximately three weeks prior to her termination and involves many of the same facts, was a separate adverse employment action that was based, at least in part, on her race.[2]

As discussed in the SJ Order, Northwell has a probationary assessment period for newly-hired and transferred employees, during which the employee's manager completes a performance

---

[1] Terms defined in the SJ Order retain the same definition herein.

[2] The legal standards outlined in the SJ Order remain applicable herein. (See SJ Order, at 6–8.)

2

appraisal of the employee and decides to (1) formally extend the assessment period; (2) retain the employee; or (3) terminate their employment. Based on the record, a reasonable juror could find that the stated probationary assessment period for both new hires and transferred employees was six months. However, nowhere in Northwell's Employee Handbook or Manual does it contemplate what happens if a manager does not complete the performance appraisal within the six-month timeframe. Thus, a reasonable juror could find that, when a manager fails to complete a performance appraisal within six months, an employee's probationary assessment period would continue, or be de facto extended, beyond the contemplated six-month timeline, until the manager completed the performance appraisal.[3]

Plaintiff's probationary assessment period lasted just over six months, from June 30, 2014 until she was terminated on January 23, 2015. Accordingly, the Court determined that a jury could find that Plaintiff's probationary assessment period was de facto extended by Palms' failure to complete Plaintiff's performance appraisal within six months of Plaintiff's transfer to her new position (rather than adopting Defendant's argument that Northwell had no strict six-month probationary assessment period, so there was no extension).[4] (SJ Order, at 24–26.)

---

[3] Plaintiff points to the Declaration of Ruth Morgan, her prior supervisor, which states, "absent [a] written justification for extension of the assessment period and presentation of same to the employee [], the assessment period automatically terminate[s] after six months and the employee cease[s] to be subject to the probationary assessment process." (Morgan Decl., ECF No. 44-5, ¶ 42.) Morgan offers no examples to support this conclusory statement. Additionally, she does not specifically address whether a probationary assessment period automatically terminates when a supervisor has not completed any sort of performance appraisal of the employee. (See id. ¶¶ 38–43.) Thus, no reasonable juror could find, by a preponderance of the evidence, that Northwell's probationary assessment period abruptly terminates after six months when no performance appraisal has been completed.

[4] Plaintiff initially suggested that Northwell fabricated her probationary status at the time she was terminated, as a pretextual reason for her termination. (See Pl.'s Mem., ECF No. 44-1, at 22–23.) The Court already rejected Plaintiff's claim that her termination was discriminatory. In her supplemental briefing, Plaintiff similarly attempts to frame the de facto extension as "an improper, retroactive extension of her probationary employment period," again suggesting that the "action" occurred during Northwell's termination discussions in mid-January 2015. (Pl.'s Suppl. Mem., at 6.) This is in no way supported by the record. There is no evidence that, when considering how to address the Complaint Letter in mid-January, Palms (or anyone else at Northwell) changed Plaintiff's employment status to that of a probationary employee. Plaintiff's probationary assessment period was instead extended by Palms' prior inaction. Moreover, if Northwell fabricated Plaintiff's status as a probationary employee at the time of her termination, such an action might be potential evidence of pretext, but would not be a separate adverse employment action.

In assessing this de facto extension of Plaintiff's probationary assessment period, now with the assistance of the parties' supplemental briefing, the Court finds that it does not constitute an adverse employment action. Moreover, even if it was an adverse employment action, Northwell has provided legitimate non-discriminatory reasons for the extension, and no reasonable juror could find, by a preponderance of the evidence, that Palms' inaction within the initial six-month timeframe was based, at least in part, on Plaintiff's race.

A. **The Extension of Plaintiff's Probationary Assessment Period is Not an Adverse Employment Action**

The de facto extension of Plaintiff's probationary assessment period does not constitute an adverse employment action because Plaintiff did not "endure a materially adverse change in the terms and conditions of employment" that was "more disruptive than a mere inconvenience or an alteration of job responsibilities." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (internal citations and quotations omitted). She did not suffer "a material loss of benefits." Id.

As the Court noted in the SJ Order, several district courts in this Circuit have found that the continuation of probationary periods similar to Plaintiff's probationary assessment period are not adverse employment actions. See Smalls v. New York Hosp. Med. Ctr. of Queens, No. 13-CV-1257, 2015 WL 5437575, at *5 (E.D.N.Y. Sept. 15, 2015) (finding that a three-month extension of an initial probationary period did not materially affect the terms and conditions of employment because all employees with plaintiff's title were placed on probation and "plaintiff was still paid the same amount, retained the same title, worked the same hours, and held generally the same amount of responsibility"); see also Zhao-Royo v. New York State Educ. Dep't, No. 14-CV-0935, 2017 WL 149981, at *33 (N.D.N.Y. Jan. 13, 2017) ("Plaintiff's termination constituted an adverse employment action, but [] her probationary evaluation report and her related continued employment on probationary status did not constitute adverse employment actions.").

4

Plaintiff asserts that the extension of the probationary periods in those cases were not coupled with any negative consequences, whereas her continuing status as a probationary employee prevented her from grieving her termination that occurred several weeks later. (See Pl.'s Suppl. Mem., ECF No. 64, at 6–7.) However, just like the plaintiffs in Smalls and Zhao-Royo, there were no discernable changes in the day-to-day conditions of Plaintiff's employment on January 1, 2015, after she completed her initial six-months in her new role. She was paid the same amount, retained the same title, worked the same hours, and, critically, remained an at will employee—the same conditions of employment as a non-probationary employee. (See Sealed Nichols Decl., ECF No. 43-3, Ex. A, at 12–13, 30.) The inability of a Northwell employee subject to a probationary assessment period to access Northwell's grievance process does not render a de facto extension of that employee's probationary assessment period an adverse employment action.

The Plaintiff again points to Tolbert v. Smith, where the plaintiff was denied a tenured teaching position at the same time that he was offered another year of probation. 790 F.3d 427 (2d Cir. 2015). However, Plaintiff's reliance on this case is misplaced. The critical fact that led to the Second Circuit's finding that the plaintiff in Tolbert suffered an adverse employment action was the denial of a tenured position, not merely the offer of another year of probation. See id. at 436 ("Extending an employment relationship by one year by itself may not qualify as an adverse employment action. But when coupled with the denial of tenure, it is assuredly an adverse employment action."). Plaintiff admits that access to Northwell's grievance process is not as consequential as being granted a tenured teaching position. (Pl.'s Suppl. Mem., at 5 n.2.) She instead suggests that not being granted access to any kind of potential employment benefit is enough to translate the de facto extension of her probationary assessment period into an adverse employment action. However, the nature of the potential employment benefit is an essential

element in the analysis, as the Second Circuit in Tolbert focused on the fact that the plaintiff was denied tenure. Cf. Joseph, 465 F.3d at 90 (noting that only "a material loss of benefits" constitutes an adverse employment action). Here, the potential employment benefit of access to Northwell's grievance process is far from a tenured teaching position—the end of a probationary assessment period does not grant a Northwell employee "long term job security." Tolbert, 790 F.3d at 435. The Court again stresses that Plaintiff, regardless of whether she was a probationary employee or not, was an at will employee and there is no evidence that being able to file a grievance changes the standards by which Northwell can terminate its employees (by, for example, making it only possible to terminate for cause). Moreover, Plaintiff cites to no evidence in the record describing the details of this allegedly critical grievance process. And, Plaintiff's conclusory contention that, had she been afforded an opportunity to grieve her termination, "there is ample reason to believe the termination would have been reversed," (Pl.'s Suppl. Mem., at 6.), is wholly unsubstantiated by the record.[5]

Finally, the three other cases Plaintiff cites are inapplicable here. (See Pl.'s Suppl. Mem., at 5.) First, all are in the Title VII retaliation context, which considers a broader range of actions to be adverse employment actions. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006) (explaining that a materially adverse employment action in the retaliation context is one which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). While the Court recognizes that two of the three cases cited by Plaintiff were decided before 2006, and thus did not clearly apply the broader adverse employment action

---

[5] Plaintiff again cites to the Declaration of Ruth Morgan, who offers her opinion that the Complaint Letter "warranted [no] more than a verbal warning" pursuant to Northwell's progressive discipline policy. (Morgan Decl. ¶¶ 47, 53.) Morgan, who is not in Human Resources, does not address the Complaint Letter in the context of Northwell's grievance process. In fact, her declaration offers no insight into the grievance process. Thus, Morgan does not support Plaintiff's conclusory contention that her termination would have definitively been overturned, or her argument that the de facto extension of her probationary assessment period is an adverse employment action.

standard articulated in Burlington Northern, all three cases are also otherwise readily distinguishable. Two of the cases involve union grievance procedures, which aligns them more closely to Tolbert. See Jiggetts v. Diaz, No. 02-CV-8959, 2009 WL 749575 (S.D.N.Y. Mar. 20, 2009) (finding, after Burlington Northern, that a union representative's denial of access to the grievance process—where plaintiff raised a specific issue to grieve—was an adverse employment action); Vara v. Mineta, No. 01-CV-9311, 2004 WL 2002932 (S.D.N.Y. Sept. 7, 2004) (noting that restricting access to grievance procedures guaranteed by a collective bargaining process likely constitutes an adverse employment action). The final case, Bowles v. New York City Transit Auth., considered whether the decision by a grievance hearing officer, denying the plaintiff's grievance, and thus affirming the plaintiff's termination, was an adverse employment action. No. 03-CV-3073, 2004 WL 548021 (S.D.N.Y. Mar. 18, 2004). There is no question that a termination decision constitutes an adverse employment action. Thus, none of Plaintiff's cited cases compel a different result, and the Court concludes that the de facto extension of Plaintiff's probationary assessment period does not constitute an adverse employment action.

## B. Northwell Identified Nondiscriminatory Reasons for the De Facto Extension

Even if the de facto extension of Plaintiff's probationary assessment period qualifies as an adverse employment action, Northwell has met its low burden of identifying legitimate nondiscriminatory reasons why Palms did not complete Plaintiff's performance appraisal (or finalize a plan to extend her assessment period) within the first six months of Plaintiff assuming her new position. Defendant identified the following legitimate nondiscriminatory reasons: (1) Palms was hired by Northwell and became Plaintiff's supervisor towards the end of the contemplated assessment period; (2) Palms was not made aware of the existence of Plaintiff's probationary assessment period until mid-November; (3) Palms did not meet with Plaintiff to discuss her expectations and a plan for Plaintiff's role moving forward until mid-December 2014;

7

and thus (4) Palms needed time to determine the precise length to extend Plaintiff's probationary assessment period, which was difficult to do at that time because of scheduling constraints around the holiday season. (Def.'s Suppl. Mem., ECF No. 62-1, at 6–8.) In short, Northwell asserts it was a timing issue due to Palms' recent hiring and the holiday season.

Again, as Defendant's burden "is one of production, not persuasion," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citations omitted), these reasons are sufficient to rebut the temporary presumption of discrimination arising from Plaintiff's prima facie case of discrimination.[6] See Holcomb, 521 F.3d at 141.

## C. Plaintiff Cannot Show That the Extension of Her Probationary Assessment Period Was Discriminatory

Plaintiff asserts that Palms' need for additional time to evaluate her performance is both unsupported by the record and fails to account for Northwell's purported violation of its applicable policies, which she again claims that, together with her prima facie case, is enough to survive summary judgment. (Pl.'s Suppl. Mem., at 7–10.) While Palms' testimony about Plaintiff's probationary assessment period raises a factual question, even resolving it in favor of the Plaintiff, she cannot satisfy her burden to show that a reasonable jury could find by the preponderance of the evidence that Northwell's timing reason, even if pretextual, was a pretext for race discrimination.

Plaintiff asserts that Palms lied at her deposition because Nichols did not remember a conversation prior to January 2015 regarding Plaintiff's performance issues. Palms testified that she discussed the procedures to extend Plaintiff's probationary assessment period with Human

---

[6] As the Court found in the SJ Order, Plaintiff established a prima facie case of discrimination regarding her claim that her termination was discriminatory. Her claim concerning the de facto extension of her probationary assessment period would seemingly meet the same low bar because it involves all the same evidence. Accordingly, the Court will not conduct a separate analysis of Plaintiff's prima facie case for this claim.

Resources in November or December 2014, and her understanding from that conversation was that Plaintiff's probationary assessment period would continue until Palms defined the parameters of an official extension. (Palms Dep. 124:20–125:14.) Nichols was not asked specifically about a conversation regarding the extension of a probationary assessment period, but she testified that she did not have any conversations about Plaintiff prior to January 2015. (Levy Decl., ECF No. 44-4, Ex. 9, 107:3–11, 148:10–24.)

At the summary judgment stage, the Court assumes that this raises a factual question about whether Palms spoke to Nichols about Plaintiff prior to January 2015. However, even if Palms did not discuss Plaintiff's probationary assessment period with Nichols prior to its expiration, it is not clear that this is enough to establish pretext. There is still no evidence that Northwell's overall timing reason for the de facto extension was pretextual, as the remaining evidence is undisputed. Palms was hired in October 2014, received notification of Plaintiff's probationary assessment period in November 2014, and did not meet with Plaintiff to discuss her assuming responsibility for the educational presentations until December 12, 2014—just before the holiday season. (Rule 56.1 Stmt. ¶¶ 61, 65, 67, 68, 74, 120–21.)

Plaintiff also asserts that Northwell's departure from its applicable policy by taking more than six months to complete Plaintiff's probationary assessment provides evidence that the reasons for the extension were pretextual. However, there is ample evidence that the six-month timeframe referenced in Northwell's Employee Handbook was not a well-settled policy that was only disregarded when it came to Plaintiff. Nichols testified that the probationary assessment period was not necessarily six months because, as a matter of practice, there are situations, like a change in manager, when it extends past six-months. (Nichols Dep., 132:7–137:25). Similarly, the Associate Executive Director of Human Resources, Debra Bierman, testified that Northwell does

not have a hard and fast rule or policy requiring managers to complete the probationary assessment period within six months. (Dulgerian Decl., ECF No. 42-3, Ex. J, 59:15–60:15.) And, notably, the only evidence in the record regarding the length of another employee's probationary assessment period was that of Burks-Davis (Plaintiff's replacement). Burks-Davis was hired on June 13, 2015, but her assessment period (which also spanned the holiday season) lasted over seven months, until Palms completed her performance appraisal on January 31, 2016. (See Sealed Palms Decl. ¶¶ 79, 83l; Id. Ex. N.)

In any event, the Court already concluded that a minor departure from the general six-month timeframe itself would not, under all the circumstances here, be enough for a reasonable jury to find that Palms terminated Plaintiff because of her race. (SJ Order, at 14.) This same conclusion applies to Palms' failure to conduct Plaintiff's probationary assessment within six months—particularly where there is evidence that the six-month timeframe is not strictly followed. See Chen v. Suffolk Cty. Cmty. Coll., 2017 WL 2116701, at *12 (E.D.N.Y. Mar. 31, 2017) aff'd 734 F. App'x 773 (2d Cir. 2018) (noting that departures from procedure, without more, do not show that an employer was motivated by racial discrimination).

Critically, even if there are some factual disputes regarding the veracity of Northwell's proffered reasons for the de facto extension of Plaintiff's probationary assessment period that go to the question of pretext, Plaintiff still has not demonstrated that Palms' failure to timely complete Plaintiff's performance appraisal was in any way motivated by racial animus. The Court painstakingly addressed all the purported evidence of discrimination in the SJ Order, finding that "when considering all the evidence raised by Plaintiff together, she has failed to show 'sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire [Plaintiff] was based, at least in part, on' her race." (SJ Order, at 24 (citing

10

Holcomb, 521 F.3d at 141); see also id. at 14–24.) Plaintiff has identified no additional probative evidence that Palms was motivated by racial animus regarding the de facto extension of Plaintiff's probationary assessment period. The Court thus concludes that Plaintiff has failed to identify sufficient evidence for a reasonable jury to conclude by the preponderance of the evidence that Palms' inaction in this regard was based, at least in part, on her race.

### III.  CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment on Plaintiff's final claim for relief and the Complaint is dismissed in its entirety. The Clerk of the Court is directed to issue judgment accordingly and close this case.

**SO ORDERED.**

Dated: August 5, 2019
Central Islip, New York

                                                 /s/ (JMA)
                                                JOAN M. AZRACK
                                                UNITED STATES DISTRICT JUDGE